TUILEFANO VAELA'A, Appellant,
v.
AMERICAN SAMOA GOVERNMENT, Appellee.

High Court of American Samoa
Appellate Division

AP No. 33-82

January 4, 1983

Before GARDNER, Chief Justice, MURPHY, Associate Justice, TAUANU'U, Associate Judge, and POUTOA, Associate Judge.

GARDNER, Chief Justice.

In this case we hold that the electronic recording device used in the District Court suffices for compliance with section 3.0309 ASCA.

Section 3.0309 reflects a common judicial practice involving appeals from inferior courts to Appellate tribunals. If there is an adequate record, normal appellate practices prevail, with a review of the record for correctness or in some cases for institutional or precedential purposes. If there is no adequate record, then of course, a trial de novo is essential because without an adequate record there is nothing to review. So much for the obvious.

To carry out this concept, section 3.0309 provides that where there is a "stenographic record" the appellate division of the High Court reviews the record. If there is no such record a trial de novo is mandated in the trial division of the High Court. Defendant contends that since the phrase "stenographic record" is used, an electronically produced record does not comply with the section. We disagree. The operational word is "record." "Stenographic" is merely descriptive.

Appellant Tuilefano Vaela'a was charged with disturbing the peace in violation of ASCA 46.4501. He was found guilty in a bench trial in the District Court. There was a stenotype operator present taking notes for part of the proceedings. Part of the proceeding was recorded by means of an

70

electronic recording device maintained and operated by a court employee. Notice of Appeal was filed and the defendant's motion for a trial _de novo_ was made. We deny that motion.

At one time in our judicial history, stenographers were used as court reporters and a few doddering oldsters (including the author of this opinion) can remember when stenographic court reporters squiggled madly with either Pittman or Gregg hieroglyphics on stenographic pads to maintain a record of all testimony. This practice fit the literal description of a stenographic reporter as the word "stenographic" is defined by Webster as writing in shorthand, stenography being the art or process of writing in shorthand. Shorthand notes were taken which were subsequently transcribed into typewriten records. Then, during the late 1930's or early 1940's, these stenographers were replaced by the more effective stenotype operators using machines to record speech by means of phonograms, by which a typed symbol is used to represent a word, syllable or single speech sound. After the operator takes down the "code" it is transcribed into a typed written record like that of the early stenographic court reporters. The "record" is non-existent until the reporter transcribes, types, and certifies it. The point of all this is that long before the enactment of section 3.0309 in 1979, when the District Court was established, stenographic reporters were a thing of the past.

Now, over the violent protest of court reporters (who face loss of employment) some jurisdictions are using electronic recording devices. These were pioneered in the military and adopted for the first time for civilian use in the then territory of Alaska. Other jurisdictions, for example Hawaii, have followed. Under this process the electronic recorder actually reproduces the oral statement of the individual which is then reduced to a written record. The system employed by the District Court is an electronic recording device designed specifically for use in the courtroom. (Model Lanier). It utilizes a four track system with a separate erasure mechanism, thereby insuring against an accidental destruction of the tape material.* The court personnel are trained in the system's maintenance and operation. For additional accuracy the reviewing court can, if it wishes, actually listen to the spoken words.

The point of all this, is that the phrase "stenographic record" is a phrase of art which realisticaly can only mean a process by which an accurate record may be made. Literally construed, no record since the late 1940's could be classified as one by a "stenographic reporter" since that process had long since given a way to the stenotype operator. The key word is "record" not "stenographic".

Legislation is enacted in broad strokes and interpreted and applied by courts and administrative agencies in a realistic manner in order to adjust to changing conditions, at the same time keeping intact the basic purpose of the Legislation. Here, the basic purpose is the preservation of a record. This is done by the use of the electronic recording device. It appears to us that the basic purpose of the section is the preservation of a record, a record that may be produced by any of several methods but results in the same product ----a typewritten, certified transcript of the court proceedings.

Therefore, the defendant's request for a trial _de novo_ is denied. The appellant is given twenty days to obtain a transcript of the proceedings in

---

*If Nixon had used one he might still be president.

71

the District Court, thereafter the appeal is to follow normal appellate process.